UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| MONICA HAWKINS, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 18-cv-2263 |
| ) | |
| VERMILION COUNTY HOUSING ) | |
| AUTHORITY, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

On October 9, 2018, Plaintiff, Monica Hawkins, filed her Complaint (#1) against Defendant, Vermilion County Housing Authority[1]. On February 11, 2019, Defendant filed a Motion to Dismiss (#4). Plaintiff filed her Response (#10) on June 14, 2019. Plaintiff filed additional documents to support her Response on June 17, 2019 (#11), June 20, 2019 (#12), June 21, 2019 (#13), and July 1, 2019 (#14). For the reasons that follow, Defendant's Motion to Dismiss is granted.

BACKGROUND

The Complaint alleges the following events, all occurring in Illinois within the five month period from August to December 2016.

On August 10, Plaintiff began working as an Administrative Support Assistant for Defendant Vermilion County Housing Authority ("VCHA"). Executive Director R.M. Jackson (race unspecified) was her supervisor. Jackson "had the ability to make

---

[1] Plaintiff was represented by counsel when she filed the Complaint. She is proceeding *pro se* as of June 7, 2019.

significant changes in Plaintiff's employment status, such as hiring, firing, failing to promote, and/or reassigning Plaintiff to a new position with significantly different responsibilities."

As a result of a 2009 vehicular accident, Plaintiff experienced brain trauma, color blindness in one eye, dyslexia, linguistic disorder, and damage to her spine, arms, and legs. Upon being hired, she informed Defendant of her disabilities.

On her first day of work, Jackson gave Plaintiff a document titled "How to be in a Relationship with an Alpha Woman." Plaintiff threw it out. Jackson took it out of the trash and gave it to Plaintiff again. Plaintiff again threw it out, asked Jackson to cease her harassing behavior, and told Jackson that she was not attracted to women. Later that day, Jackson gave the document to Plaintiff a third time.

On other occasions, Jackson purposefully brushed her breasts or buttocks against Plaintiff's body while in the office. She repeatedly tried to touch Plaintiff's body, despite Plaintiff's objections. Plaintiff frequently caught Jackson staring at her body. She asked Jackson to stop, but Jackson refused. Jackson stared down Plaintiff's shirt after making Plaintiff bend over Jackson's desk to look at documents Plaintiff needed that Jackson would not give to her.

On a few occasions, despite the summer temperatures, Jackson turned the heater on and summoned Plaintiff to her office. Plaintiff suffered through the heat to avoid removing articles of clothing.

Jackson frequently referred to another coworker's genitalia. One time in August, Jackson referred to Plaintiff as her "beautiful, human, yellow doll."[2]

In early September, Jackson was evicted from her apartment. Jackson "demanded that Plaintiff allow Jackson to live with her at her apartment for 30 days, or else she would be terminated." Under that threat, Jackson began sleeping in another room in Plaintiff's apartment. The harassing behavior and unwanted touching continued.

Jackson would call Plaintiff to her office to fix "some vague computer problem," then stand over Plaintiff and try to stroke her body while Plaintiff worked on the problem. Jackson also put pens in her mouth in a sexually suggestive manner. Jackson frequently licked her lips while looking up and down Plaintiff's body.

One night, at her apartment, Jackson walked backwards into Plaintiff's room, naked and bent over, exposing her genitals. Plaintiff told Jackson to leave. Jackson said she was merely looking for a crayon.

Near the end of September, Plaintiff met with VCHA's Housing Programs Manager, Liz Brewster, to report Jackson's harassment. Fearing retaliation by Jackson, Brewster refused to help Plaintiff.

---

[2] Plaintiff's Response states this comment referred to her skin tone.

Plaintiff tried to discuss possible employment opportunities with the Danville Housing Authority ("DHA"), but Jackson took a return call for Plaintiff when Plaintiff was out of the office. Jackson threatened to fire Plaintiff if she ever tried to contact the DHA again.

After repeatedly rejecting Jackson's advances, and after the DHA call and Plaintiff's reporting Jackson to Brewster, Jackson "began to treat Plaintiff differently in the workplace." She assigned some of Plaintiff's tasks to a newly-hired temporary employee, and she denied Plaintiff a promotion to permanent employee status.

In early October, Plaintiff began dressing plainly in an effort to avoid harassment, but it continued. Jackson still lived in Plaintiff's spare room, and she bought a set of neon yellow and green kitchen knives and a bold printed shower curtain "that exacerbated Plaintiff's disabilities" and caused headaches, nausea, and balance problems.

Jackson refused to allow Plaintiff to attend three scheduled conferences in October. Jackson withheld materials Plaintiff needed to carry out her job duties, and would not give Plaintiff any assignments. Jackson cut Plaintiff's work schedule dramatically, then refused to pay Plaintiff for half of September and all of October.

On October 24, 2016, at Plaintiff's apartment, Plaintiff saw Jackson holding a bottle of eye drops while standing over a pot of chili. Plaintiff ate a cup of the chili and became ill, her condition worsening over the next week.

On October 29, 2016, Jackson tried to grab Plaintiff's breasts and pull on her nipples. Plaintiff got away and called 911. Jackson tried to rip the phone out of her hands.

On November 4, 2016, Plaintiff went to the hospital after her condition deteriorated to the point where she drifted in and out of consciousness. She was placed on an I.V., given medication, and told she could have died without treatment.

Upon her release from the hospital, Plaintiff was served with an Order of Protection, fraudulently filed by Jackson. At a hearing on that Order of Protection, Jackson told the judge that she had fired Plaintiff on October 29. Plaintiff did not know that she had been fired. On November 10, 2016, a VCHA lawyer notified Plaintiff that she was terminated. The lawyer gave no reason for the termination.

In December, Plaintiff sought treatment for anxiety.

Plaintiff's Complaint contains eleven Counts. It alleges jurisdiction on the basis that "federal questions are involved."[3]

Counts I and II allege race discrimination and retaliation in violation of 42 U.S.C. § 1981. As pled, the nine remaining counts all allege violations of only Illinois state law: the Illinois Human Rights Act, 775 Ill. Comp. Stat. 5 *et seq.* ("IHRA"). The IHRA counts allege discrimination on the basis of gender (Counts III-V), age (Counts VI-VIII), and disability (Counts IX-XI). The Complaint contains a separate count for a hostile work

---

[3] 28 U.S.C. § 1331 provides for "federal question" jurisdiction.

environment, retaliation, and tangible employment action for each type of discrimination alleged.

The Complaint states that Plaintiff seeks damages "in such an amount in excess of $25,000.00 as is deemed fair and reasonable."

## ANALYSIS

Defendant argues that Counts I and II should be dismissed under Federal Rule of Civil Procedure 12(b)(6), and that the court should then relinquish jurisdiction over all of the remaining claims because they are all state law claims.

Plaintiff's *pro se* Response does not respond to Defendant's specific legal arguments. It restates the Complaint's allegations and claims that Defendant did not fire law-breaking white employees or Jackson.

Plaintiff filed three Exhibits (#11, #12, #13) after she filed her Response. Docket Entry 11 is labeled "Complaint," and its factual allegations section is largely identical to that section in the Complaint (#1)[4]. However, the actual pleading in this case is the Complaint. Plaintiff stated in her fax cover sheet that Docket Entry 11 regarded "'Objection' to Dismissal of Case," and she asked the court to "admit this document so as to preclude the dismissal of my case." She did not file the document as an amended

---

[4]Like the Complaint (#1) the Exhibit (#11) purports to contain eleven Counts, which generally match those of the Complaint. However, some of the "Counts" in the Exhibit (unlike the Complaint) refer to Missouri law instead of Illinois law, or to additional individuals (Friendship, Nolan and Graybar). Neither the Complaint nor Docket Entry 11 mention those individuals in their facts sections or name them as defendants in the caption.

complaint, nor does she state in her cover message that she wishes to amend the complaint. The court will consider Plaintiff's Complaint (#1). Docket Entry 11, which is styled as a "Complaint" but is not Plaintiff's operative pleading, will not be considered because it is irrelevant.

Plaintiff also filed three additional documents (#12, #13, #14) after the June 17, 2019 deadline for responding to the Motion to Dismiss had passed. She has not asked for an extension of time in which to file her Exhibits. The untimely exhibits, filed in a piecemeal fashion, will not be considered. Nor would they be helpful to Plaintiff. See *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989) (complaint may not be amended by the briefs in opposition to a motion to dismiss.) Docket Entries 12 and 13 concern a meeting and individuals that the Complaint fails to mention. Docket Entry 14 consists of an unsigned employment contract, a description of the job opening, allegations about Jackson having a dispute with her former landlord, an email discussing work tasks, and allegations against Danville police officers; it does not significantly aid the court in determining the sufficiency of the Complaint.

*The Rule 12(b)(6) Standard*

The purpose of a Rule 12(b)(6) motion is to test the sufficiency of the complaint, *not* to decide the merits of the case. See *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011) (emphasis in original). The complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 832 (7th Cir. 2005), quoting Fed.

R. Civ. P. 8(a)(2). This requirement is meant to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When ruling on a motion to dismiss, a court must accept, as true, all factual allegations contained within the complaint. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, the complaint need only contain sufficient factual allegations to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 570. However, "[n]either conclusory legal statements nor abstract recitations of the elements of a cause of action add to the notice that Rule 8 demands, so they do not help a complaint survive a Rule 12(b)(6) motion." *Huri*, 804 F.3d at 832, citing *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010). A plaintiff must provide factual allegations that are enough to raise the right to relief above the speculative level. *Twombly*, 550 U.S. at 555.

*Whether the Federal Claims Should Be Dismissed Under Rule 12(b)(6)*

Defendant argues that Plaintiff's Counts I and II should be dismissed because Plaintiff failed to plead sufficient facts to support § 1981 claims for race discrimination or retaliation. The court agrees.

Defendant VCHA is a state actor. See 310 Ill. Comp. Stat. 10/3 (granting local and municipal governments the authority to create housing authorities); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 823 (7th Cir. 2009) ("In most cases, the state actor is an officer or employee of state government, and it is easy to conclude that the person's actions are fairly attributable to the state."); *Khan v. Bland*, 630 F.3d 519, 527

(7th Cir. 2010) (treating actions of a housing authority as state actions for purposes of Fourteenth Amendment).

Plaintiff cannot bring § 1981 claims against Defendant VCHA because it is a state actor. Instead, "[42 U.S.C.] § 1983 remains the exclusive remedy for violations of § 1981 committed by state actors." *Edmond v. City of Chicago*, 2018 WL 5994929, at *6 (N.D. Ill. Nov. 15, 2018), quoting *Campbell v. Forest Preserve Dist. of Cook Cty.*, 752 F.3d 665 (7th Cir. 2014).

The Complaint's citing only § 1981 does not *automatically* mean Counts I and II must be dismissed. *Edmond* explains:

> Moreover, district court cases in this circuit hold that a complaint need not cite § 1983 to avoid dismissal of a § 1981 claim. Rather, a claim pleaded as a § 1981 claim will ordinarily be construed as arising under § 1983. *See, e.g., Aku v. Chicago Bd. of Educ.*, 290 F. Supp. 3d 852, 862 (N.D. Ill. 2018). After all, plaintiffs do not need to plead legal theories, such as section numbers, and little usually can be gained by "requiring [a plaintiff] to replead [a § 1981 claim] to specifically mention Section 1983." *Barrett v. Ill. Cmty. Coll. Dist. No. 515*, 2015 WL 4381218, at *3 (N.D. Ill. July 16, 2015) (citing *Shah v. Inter-Cont'l Hotel Chicago Operating Corp.*, 314 F.3d 278, 282 (7th Cir. 2002)) (denying motion to dismiss § 1981 count and construing it as arising under §§ 1981 and 1983).

*Edmond*, 2018 WL 5994929, at *6.

Thus, the court will construe Counts I and II as arising under §§ 1981 and 1983. Even so construed, however, the counts remain subject to dismissal to the extent Plaintiff fails to satisfy § 1983's requirements for bringing suit against a state actor. *Edmond*, 2018 WL 5994929, at *6.

Under *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978),

> . . . a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

Plaintiff's Counts I and II must be dismissed under Rule 12(b)(6). A plaintiff may establish municipal liability for a deprivation of her constitutional rights only if she can show the existence of a municipal policy or custom and a sufficient causal link between the policy or custom and the constitutional deprivation. *Monell.*, 436 U.S. at 690-94. No policy or custom of racial discrimination is alleged in the Complaint. Therefore, it must be dismissed.

Moreover, the Complaint's lack of facts pertaining to racial discrimination extends past just a lack of facts about a policy or custom. Count I contains conclusory allegations of racial discrimination, including alleging "Plaintiff's bi-racial race was the motivating factor in the disparate treatment she suffered, and continues to suffer." The complaint does not allege any facts about anyone treated disparately, and the conclusory legal statements and recitations of the elements of a cause of action "do not help a complaint survive a Rule 12(b)(6) motion." *Huri*, 804 F.3d at 832.

Count II does not even mention *racial* discrimination, instead alleging only that Plaintiff complained of and was subjected to "discrimination and harassment." The Complaint does not actually allege what Plaintiff's race is/races are, other than to say

that she is bi-racial. It does not allege that anyone knew that she was bi-racial, or knew her racial background. The only factual allegation anywhere in the Complaint that could be interpreted as a reference to Plaintiff's unspecified bi-race is the allegation that, one time in August, Jackson referred to Plaintiff as her "beautiful, human, yellow doll." The Complaint does not allege any facts that suggest that Plaintiff's race was the basis for an adverse employment action. Counts I and II both fail to state a claim for racial discrimination even if the *Monell* standard did not apply due to these voids in the factual allegations.

      Defendant argues that after dismissing Counts I and II, the court should relinquish jurisdiction over all of the remaining claims because they are all state law claims. While the remaining Counts cite only to state law, federal law permits gender, age, and disability discrimination claims to be brought under the circumstances set forth in Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act ("ADEA"), and the Americans with Disabilities Act ("ADA"). Because, as noted above, a plaintiff is not required to plead legal theories, the court will determine whether a federal question may arise under any of the federal anti-discrimination laws. See *Edmond*, 2018 WL 5994929, at *6.

      Defendant argues that Title VII does not apply because the Complaint concedes Defendant lacks the requisite number of employees.[5] As of 1972, Title VII reaches state

---

[5] While none of the Counts cite Title VII, Defendant mentioned it because the Complaint's first paragraph states that the case is brought under § 1981 and Title VII.

and local government employers. *Mount Lemmon Fire Dist. v. Guido*, 139 S. Ct. 22, 25 (2018). Like private employers, state and local employers "meet Title VII's definition of 'employer' and are subject to liability only if they have at least 15 employees." *Id.;* 42 U.S.C. § 2000e(a)-(b). The same is true of the ADA. *Mount Lemmon*, 139 S. Ct. 22, 25 n.1; 42 U.S.C. § 12111(5)(A).

Plaintiff's Complaint alleges that "Defendant has 6 or more employees on all relevant dates contained herein." Attached to the Complaint, the EEOC Dismissal and Notice of Rights (#1-2) states that the EEOC closed its file on the charge because: "The Respondent employs less than the required number of employees or is not otherwise covered by the statutes." Because the Complaint alleges Defendant had as few a six employees, the Complaint cannot be viewed as stating a Title VII or ADA claim while citing only to the IDHR. The Complaint does not state a federal cause of action for gender or disability discrimination (nor does it purport to do so).

Unlike Title VII and the ADA, the ADEA's numerosity specification (20 or more employees) does not apply to state and local governments. *Mount Lemmon*, 139 S. Ct. at 25. The Complaint's allegation that Defendant had as few as six employees thus does not prevent Plaintiff from stating a federal age discrimination claim. However, the Complaint fails to state a claim of age discrimination under the ADEA because it completely lacks any factual allegations concerning age discrimination. The Complaint does not even allege Plaintiff's age. It does not allege anyone connected to Defendant was aware of Plaintiff's age. It fails to connect any dots between Plaintiff's unspecified

age and any adverse employment action. The age discrimination Counts fail to state a federal claim. They do not provide a basis for the court to exercise its federal question jurisdiction.

*Whether this Court Should Exercise Supplemental Jurisdiction*

Plaintiff's Complaint fails to state any federal claim. The only basis of federal jurisdiction over Plaintiff's state-law claims was federal supplemental jurisdiction under 28 U.S.C. § 1367. Under that statute, federal courts may "decide state-law claims that are outside the federal diversity jurisdiction if they are so closely related to the plaintiff's federal-law claims as to be in effect part of the same case." *Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 906 (7th Cir. 2007).

Where "the district court has dismissed all claims over which it has original jurisdiction," it may decline to exercise supplemental jurisdiction. *Id.*, citing 28 U.S.C. § 1367(c).

> *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251–52 (7th Cir. 1994), identifies three situations in which jurisdiction over supplemental claims should be retained even though the federal claims have dropped out: where the statute of limitations would bar the refiling of the supplemental claims in state court (in fact section 1367(d) explicitly tolls the statute of limitations for 30 days after dismissal of a supplemental claim, to allow the plaintiff to refile the claim in state court without being time-barred [citation]); where substantial federal judicial resources have already been expended on the resolution of the supplemental claims; and where it is obvious how the claims should be decided.

*Garrity*, 479 F.3d 904, 906–07.

When the federal claims are dismissed before trial, there is a rebuttable presumption against retaining jurisdiction of supplemental state law claims because "[s]ubstantial judicial and party resources will probably not have been expended on the litigation, and so the economies from retaining jurisdiction over the state-law claims will be slight." *Id.* at 907.

Here, not only does 1367(d) explicitly toll the statute of limitations as mentioned in *Garrity*, Illinois law also provides for an extended limitations period. See 735 Ill. Comp. Stat. 5/13-217 (When an "action is dismissed by a United States District Court for lack of jurisdiction . . . the plaintiff . . . may commence a new action within one year or within the remaining period of limitation, whichever is greater, after . . . the action is dismissed by a United States District Court for lack of jurisdiction."). The court has not yet expended any substantial resources on the resolution of the supplemental claims. Furthre, it is not obvious how the supplemental claims should be decided. The court thus declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

The Complaint based federal jurisdiction only on 28 U.S.C. § 1331, "federal question" jurisdiction. The court finds that the Complaint fails to state any federal claim, and exercising supplemental jurisdiction is not appropriate under the circumstances of this case. Defendant's Motion to Dismiss is granted because the court lacks jurisdiction over Plaintiff's claims.

IT IS THEREFORE ORDERED THAT:

    (1)    Defendant's Motion to Dismiss (#4) is GRANTED.

(2) Plaintiff's Complaint (#1) is DISMISSED without prejudice as to Plaintiff bringing suit in state court.

(3) Plaintiff has 21 days from the date of this order to amend her complaint. Failure to do so will result in the termination of this case in this court.

ENTERED this 1st day of July, 2019.

s/COLIN S. BRUCE
U.S. DISTRICT JUDGE